***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stephenson along with the briefs and arguments on appeal. The appealing party has shown good ground to receive further evidence or to amend the prior Opinion and Award. The Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times to this claim, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer has been self-insured for workers' compensation claims at all relevant times to this claim.
4. The parties stipulated to an average weekly wage of $380.97, which yields a compensation rate of $253.98.
5. The parties stipulated into evidence a Pre-Trial Agreement as Stipulated Exhibit No. 1.
6. The parties stipulated into evidence plaintiff's medical records as Stipulated Exhibit No. 2.
7. The parties stipulated into evidence Plaintiff's Answers to Discovery as Stipulated Exhibit 3.
8. The parties stipulated into evidence a letter to plaintiff from defendant-employer as Stipulated Exhibit 4.
9. The parties stipulated into evidence Murphy Brown personnel documents as Stipulated Exhibit 5.
10. The parties stipulated into evidence combined insurance company documents as Stipulated Exhibit 6.
11. The parties stipulated into evidence a Job Description as Stipulated Exhibit 7.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old. Plaintiff had been employed by defendant as a boar stud technician.
2. Plaintiff was employed as a boar stud technician for 3 years. In short, plaintiff's duties involved repetitive use of his right hand during the manual collection of semen from boars.
3. Plaintiff testified credibly and at length about his job duties as a boar stud technician. Plaintiff testified that this process involved several steps. First, plaintiff would retrieve a boar and bring the boar to the "collecting pen," where the semen collection process took place. Plaintiff estimated that the hogs weighed between 500 and 600 pounds. Plaintiff then had to persuade the boar to "jump the dummy," i.e. to become stimulated by a decoy female hog to the extent that the boar would mount the decoy. Once the dummy had been "jumped," plaintiff sat on a five-gallon bucket and proceeded to "clean him out." Plaintiff explained this "cleaning out" process as "grasp[ing] his sheath and . . . pull[ing] it forward like this to get all the urine out of his sack." After the boar had been "cleaned out," the plaintiff testified that he would then "play with him . . . to get his penis to come out so you could collect [the semen] in a cup." Plaintiff testified that this process required a very firm grip, with plaintiff squeezing his hand open and closed tightly while executing an extensive back and forth motion for five to ten minutes, depending on the boar. During this procedure the boar would frequently pull back, so plaintiff was required to hold the boar down while also manually stimulating him. As the boar ejaculated into a cup that plaintiff held in place, plaintiff was also required to "hold him there until he got done."
4. After the ejaculation was complete, the plaintiff walked the boar before returning him to his pen. The plaintiff testified credibly that the entire collection process took up to 20 minutes per boar, and that plaintiff would be required to "do" ten to fifteen boars per day. Plaintiff testified that he spent approximately 5 hours per day in the semen collection process.
5. Plaintiff's duties as a boar stud technician also, to a lesser extent, involved feeding, cleaning pens, mowing grass, spraying weeds, and other varied tasks. The bulk of plaintiff's time, however, was consumed by harvesting boar semen.
6. Plaintiff noticed his right hand and fingers growing increasingly painful over time.
7. Plaintiff saw his family medical provider, physician's assistant Mike Bhiro, on October 21, 2002 and complained wrist pain. Mr. Bhiro diagnosed plaintiff with carpal tunnel syndrome and recommended that he see an orthopedist. Plaintiff saw orthopedist Dr. Neil Conti, in November of 2002, and Dr. Conti also diagnosed plaintiff with carpal tunnel syndrome. Plaintiff underwent carpal tunnel release surgery on December 20, 2002 and returned to see Dr. Conti on December 26, 2002. Dr. Conti last saw plaintiff on January 31, 2003. On this date Dr, Conti released plaintiff to return to work with no restrictions as of February 17, 2003.
8. Plaintiff attempted to return to work as a boar stud technician but was unable to grip the boar's penis.
9. Plaintiff did return to work with defendant-employer on April 7, 2003 as a "herdsman." This job is similar to plaintiff's pre-injury job with the exception that his "herdsman" job does not require semen collection. Plaintiff earned at least his pre-injury wages following his return to work.
10. The job description provided by defendant is given little weight because it lacks any substantive description of the semen collection process. The only detailed description of the semen collection process appears in plaintiff's testimony and discovery responses.
11. Dr. Conti testified that plaintiff's employment put him at an increased risk of contracting right-sided carpal tunnel syndrome as compared to the general public not so employed.
12. Dr. Conti testified that plaintiff's employment played a substantial role in the development of his carpal tunnel syndrome, aggravated his carpal tunnel syndrome, and worsened his carpal tunnel syndrome.
13. The Commission finds that plaintiff provided timely notice of the occupational disease. Within 30 days subsequent to Dr. Conti's diagnosis of the occupational disease and causal analysis, plaintiff reported his condition to his employer and also filed a Form 18.
14. Plaintiff has no record of diabetes before February 2003. Diabetes did not cause the plaintiff's carpal tunnel syndrome.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's right-sided carpal tunnel syndrome is due to causes and conditions characteristic of and peculiar to his employment with defendant, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of his contraction of a compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $253.98 per week for the periods he was disabled from employment due to this compensable occupational disease up through April 7, 2003. N.C. Gen. Stat. § 97-29.
3. As a result of his contraction of a compensable occupational disease, plaintiff is entitled to the payment of all medical care arising from this compensable occupational disease. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $253.98 per week for the periods plaintiff was disabled from employment through April 7, 2003.
2. Defendant shall pay for past and continuing medial treatment that is reasonably necessary to give plaintiff relief from pain or lessen the period of disability.
3. A reasonable attorney's fee in the amount of 25 percent of the compensation awarded plaintiff is approved for plaintiff's counsel. Twenty-five percent of the compensation accrued and due plaintiff shall be deducted and paid directly to his attorney.
4. Defendant shall pay the costs of Dr. Conti's deposition.
5. Defendant shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER